CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1925.

---

### THOMAS HOWARD V. STATE OF NEBRASKA.

#### FILED JANUARY 22, 1925. No. 24169.

1. **Homicide:** DYING DECLARATIONS: ADMISSIBILITY. When on the trial of one charged with the commission of a homicide objection is made to the introduction, by the state, of declarations made by the deceased, because not shown to have been made in the belief of approaching dissolution, such belief may be shown by the testimony of any competent witness having knowlege of the fact, and, when such belief is shown, if otherwise pertinent, it is proper to admit the declarations in evidence.

2. ———: EVIDENCE: SUFFICIENCY. The evidence has been examined; is briefly outlined in the opinion, and is *held* to sustain the verdict.

3. **Criminal Law:** SENTENCE. The court, under the authority of section 10186, Comp. St. 1922, imposes a sentence on defendant of three years confinement in' the penitentiary on the same terms and conditions as fixed in the sentence pronounced by the district court, the term to run from the date that judgment was pronounced.

ERROR to the district court for Lincoln county: GEORGE C. GILLAN, JUDGE. *Affirmed.*

*George N. Gibbs, E. G. Maggi,* and *Halligan, Beatty & Halligan,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY, GOOD and THOMPSON, JJ.

MORRISSEY, C. J.

Defendant prosecutes error from a conviction for manslaughter.

67

The charge was that defendant, on October 17, 1923, shot and wounded one Chester Porter, who, as result of such wound, died three days later. The state was permitted to prove statements made by Porter a few hours before his death, which statements charged defendant with having fired the fatal shot. It was claimed by the state that these statements were dying declarations. Defendant assigns as error the admission of this testimony and asserts that the record fails to show that the statements, if made, were made by Porter with a knowledge of impending death, etc. We do not deem it necessary to review at length the foundation for this testimony. Were we limited solely to the testimony of the witnesses who testified as to the substance of Porter's statement, there might be merit in defendant's contention; but the testimony of these witnesses, so far as the foundation for the introduction of a dying declaration is concerned, is supplemented by the testimony of the nurse who was in attendance upon the wounded man. Porter died at 2 o'clock in the afternoon. The declarations admitted in evidence were made at 11:30 a. m. The nurse testified that, when Porter was denied a hypodermic injection at about 10 o'clock a. m., he said: "What is the difference whether I die now or six hours from now? I am going to die anyway." She testified that he talked about dying only a short time before the statements in evidence were made and that he was, during the forenoon, conscious of the fact that he was about to depart this life. This testimony is not disputed. The foundation for the admission of the testimony was sufficient.

Defendant makes a general assignment that the verdict is not sustained by sufficient evidence. Porter, the victim of the unfortunate affair, was a farmer residing with his family some distance from North Platte. Defendant was his friend and had visited the Porter home from year to year. Before the shooting, defendant had been staying at Porter's home, whether merely making a visit or there for the purpose of hunting game does not clearly appear. The fatal shooting occurred on the road between Porter's home

and the city of North Platte. There was no person present but Porter and defendant. The statements of the occurrence made by Porter are incomplete and in some respects conflicting. Defendant did not testify and the record does not make a clear presentation of all that occurred between the two men. However, the testimony of those who saw them immediately before the shooting shows that they had with them a bottle of liquor and that they were more or less under the influence of liquor. They were friends; there was no cause for a quarrel between them; and were it not for their indulgence in liquor, the tragedy would never have occurred, but the evidence makes it clear that defendant fired the fatal shot. The evidence sustains the verdict.

We are asked to enter sentence under section 10186, Comp. St. 1922, and we accordingly fix the term of penal servitude at three years in the state penitentiary on the same terms and conditions as fixed in the judgment of the district court, the term to run from date of that judgment. With the term thus fixed, the judgment of the district court is

AFFIRMED.

Note—See Criminal Law, 17 C. J. sec. 3744; Homicide, 30 C. J. secs. 504, 561.